1   JOHN S. BATTENFELD, SBN 119513
    email: jbattenfeld@morganlewis.com
2   ALEXANDER CHEMERS, SBN 263726
    email: achemers@morganlewis.com
3   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue, Twenty-Second Floor
4   Los Angeles, CA 90071-3132
    Tel.  213.612.2500; Fax:  213.612.2501
5
    JENNIFER WHITE-SPERLING, SBN 166504
6   email: jwhite-sperling@morganlewis.com
    MORGAN, LEWIS & BOCKIUS LLP
7   5 Park Plaza, Suite 1750
    Irvine, CA 92614
8   Tel:  949.399.7000; Fax: 949.399.7001

9   STEPHANIE A. BLAIR, admitted *pro hac vice*
    email: sblair@morganlewis.com
10  MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
11  Philadelphia, PA  19103-2921
    Tel:  215.963.5000; Fax: 215.963.5001
12
    Attorneys for Defendant
13  LOCKHEED MARTIN CORPORATION

14                    UNITED STATES DISTRICT COURT

15                 SOUTHERN DISTRICT OF CALIFORNIA

16  JENIFER WILLIAMS, an individual, on       Case No. 09-cv-01669-WQH-POR
    behalf of herself, and on behalf of all
17  persons similarly situated,               **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF**
18                         Plaintiff,         **DEFENDANT'S OPPOSITION TO**
                                              **PLAINTIFF'S MOTION FOR CLASS**
19              vs.                           **CERTIFICATION**

20  LOCKHEED MARTIN CORPORATION,              Assigned To:
    a Maryland Corporation, and Does 1        The Honorable William Q. Hayes
21  through 10,
                                              Date:       TBD
22                         Defendants.        Time:       TBD
                                              Room:       4
23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                          Case No. 09-cv-01669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    I.      INTRODUCTION .......................................................................................... 1

4    II.     FACTUAL BACKGROUND ........................................................................ 1

5            A.      The Proposed Class Seeks To Include Employees At Different Locations,
                     With Different Roles For Different Businesses And Clients ................................ 1

6            B.      Plaintiff's Assertions of Common Duties Are Not Common ............................... 3

             C.      The Evidence Shows That Class Members' Duties Are Not Common ................. 3

7    III.    LEGAL ARGUMENT ................................................................................ 10

8            A.      THE REQUIREMENTS FOR CLASS CERTIFICATION ARE
                     DEMANDING ........................................................................................ 10

9            B.      PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE
10                   23(B)(3) ................................................................................................. 11

11                  1.      A Misclassification Class Should Not Be Certified If The Claims
                            Require A Fact-Intensive, Individual Analysis Of Each Employees
                            Exempt Status ................................................................................. 11

12                  2.      Plaintiff Fails To Address The Relevant Predominance Factors ............. 12

13                  3.      The Broad Functions Identified by Plaintiff Are Not Susceptible To
                            Common Proof ................................................................................ 12

14                  4.      The Exemptions At-Issue Will Require Numerous Individual
15                          Inquiries That Cannot Be Decided By Common Proof ......................... 17

16                  5.      Plaintiff's Alleged Common Evidence Does Not Eliminate Any Of
                            The Individual Inquiries ................................................................... 19

17                  6.      Plaintiff's Certification Authority Is Either No Longer Good Law or
                            Readily Distinguishable .................................................................. 22

18                  7.      Individual Issues Predominate In Litigating Plaintiff's Meal and
19                          Rest Period  Claims ......................................................................... 23

             C.      Plaintiff Fails To Establish That A Class Action Is The Superior Method
20                   For Adjudicating The Claims At Issue ............................................................... 24

     IV.     CONCLUSION .......................................................................................... 26

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

Alba v. Papa John's USA, Inc.
  2007 WL 953849 (C.D. Cal. 2007)........................................................... 22

5

Andrade v. Aerotek, Inc.
  2009 WL 2757099 (D. Md. Aug. 26, 2009) ............................................... 13

6

Arenas v. El Torito Rests., Inc.
  183 Cal. App. 4th 723 (2010) .................................................................... 23

7

8

Bagwell v. Florida Broadband, LLC
  385 F. Supp. 2d 1316, 1320-21 (S.D. Fla. 2005)................................. 14, 17

9

Blackwell v. SkyWest Airlines
  245 F.R.D. 453 (S.D. Cal. 2007)............................................................... 24

10

11

Bobadilla v. MDRC
  2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ........................................... 14

12

Brady v. Deloitte and Touche LLP
  2010 WL 1200045 (N.D. Cal. Mar. 23, 2010)...................................... 22, 24

13

14

Brown v. Federal Express
  2008 WL 906517 (C.D. Cal. 2008)............................................................ 24

15

Burke v. County of Monroe
  225 F. Supp. 2d 306 (W.D.N.Y. 2002) ...................................................... 15

16

17

Campbell v. Pricewaterhousecooper, L.L.P.
  253 F.R.D. 586 (E.D. Cal. 2008) ............................................................... 24

18

Clarke v. JPMorgan Chase Bank
  2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ...................................... 14, 17

19

20

Combs v. Skyriver Communications, Inc.
  159 Cal. App. 4th 1242 (2008) ........................................................ 14, 15, 24

21

Cornn v. UPS
  2005 U.S. Dist. LEXIS 47052 (N.D. Cal. Mar. 14, 2005)......................... 24

22

23

Damassia v. Duane Reade, Inc.
  250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................... 13

24

Daubert v. Merrell Dow Pharm., Inc.
  509 U.S. 579 (1993).................................................................................... 11

25

26

Dilts v. Penske Logistics, LLC
  267 F.R.D. 625 (S.D. Cal. 2010)......................................................... 23, 24

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

ii

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

### TABLE OF AUTHORITIES
(continued)

2

**Page**

3

Dukes v. Wal-Mart Stores, Inc.
2010 WL 1644259 (9th Cir. 2010).................................................................... 10, 11

4

Dunbar v. Albertson's, Inc.
141 Cal. App. 4th 1422 (2006) .......................................................................... 23

5

6

Eicher v. Advanced Business Integrators, Inc.
151 Cal. App. 4th 1363 (2007) .......................................................................... 15

7

Hanlon v. Chrysler Corp.
150 F.3d 1011 (9th Cir. 1998)............................................................................ 11

8

9

Heffelfinger v. Electronic Data Systems Corp.
580 F. Supp. 2d 933 (C.D. Cal. 2008) ............................................................ passim

10

Hernandez v. Chipotle Mexican Grill, Inc.
189 Cal. App. 4th 751 (2010) ............................................................................ 24

11

12

In re Visa Check/MasterMoney Antitrust Litig.
280 F.3d 124 (2d Cir. 2001)............................................................................... 11

13

In re Wells Fargo Home Mortgage Overtime Pay Litig.
571 F.3d 953 (9th Cir. 2009)...................................................... 1, 12, 19, 22

14

15

Keller v. Tuesday Morning, Inc.
179 Cal. App. 4th 1389 (2009) .......................................................................... 13, 23

16

Kennedy v. Commonwealth Edison Co.
410 F.3d 365 (7th Cir. 2005).............................................................................. 21

17

18

Kurihara v. Best Buy Co, Inc.
2007 WL 2501698 (N.D. Cal. Aug. 30, 2007)................................................... 23

19

Lewis v. Wells Fargo & Co.
669 F. Supp. 2d 1124 (N.D. Cal. 2009) ............................................................ 22

20

21

Louie v. Kaiser Foundation Health Plan, Inc.
2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ..................................................... 23

22

Lutz v. Ameritech Corp.
2000 WL 245485 (6th Cir. 2000)....................................................................... 14

23

24

Marlo v. UPS, Inc.
251 F.R.D. 476, 485-860 (C.D. Cal. 2008)....................................................... 10

25

Martin v. Indiana Michigan Power Co.,
381 F.3d 574 (6th Cir. 2004).............................................................................. 15

26

27

Mendoza v. Home Depot, U.S.A. Inc.
2010 WL 424679 (C.D. Cal. Jan. 21, 2010) ..................................................... 25

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES
### (continued)

**Page**

Mike v. Safeco Ins. Co. of America.
223 F.R.D. 50 (D.Conn. 2004) ............................................................. 19

Orphanos v. Charles Indus., Ltd.
1996 WL 437380 (N.D. Ill. July 29, 1996) .......................................... 14

Ortega v. J.B. Hunt Transportation, Inc.
258 F.R.D. 361 (C.D. Cal. 2009) .................................................... 23, 24

Paul v. One Touch Technologies Corp
2007 WL 1786259 (June 21, 2007) ...................................................... 14

Perez v. Safety-Kleen Systems, Inc.
253 F.R.D. 508 (N.D. Cal. 2008) ......................................................... 23

Salazar v. Avis Budget Group, Inc.
251 F.R.D. 529 (S.D. Cal. 2008) .......................................................... 24

Sav-On Drugstore, Inc. v. Superior Court
34 Cal. 4th 319 (2004) ......................................................................... 23

Taylor v. United Parcel Service, Inc.
2010 WL 4983586 (Dec. 9, 2010) ....................................................... 21

Tierno v. Rite Aid Corp.
2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ..................................... 22

Trinh v. JP Morgan Chase & Co.
2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ...................................... 16

Turner v. Human Genome Sciences, Inc.
292 F. Supp. 2nd 738 (D. Md. 2003) ................................................... 15

Vinole v. Countrywide Home Loans, Inc.,
571 F.3d 935 (9th Cir. 2009) ......................................................... passim

Walsh v. Ikon Office Solutions, Inc.
148 Cal. App. 4th 1440 (2007) ........................................................... 23

Wang v. Chinese Daily News, Inc.
231 F.R.D. 602 (C.D. Cal. 2005) ........................................................ 22

Webster v. Public School Employees
247 F.2d 910 (9th Cir. 2001) .............................................................. 15

Weigele v. Fed Ex
2010 WL 1337031 (S.D. Cal. Apr. 5, 2010) .................................. 22, 25

Whiteway v. FedEx Kinko's Office & Print Servs., Inc.
Case No. C05-2320 SBA (N.D. Cal. Oct. 2, 2009) ............................. 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

Wong v. HSBC Mortgage
  2010 WL 3833952 (N.D. Cal. Sept. 29, 2010) ............................................................ 22

Zinser v. Accufix Research Inst., Inc.
  253 F.3d 1180 (9th Cir. 2001)............................................................................. 10, 25

**Statutes**

29 C.F.R.
  § 541.205............................................................................................................. 17

29 C.F.R.
  § 541.207......................................................................................................... 20, 21

Labor Code
  § 515.5.................................................................................................................. 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

v

I.     **INTRODUCTION**

Plaintiff Jennifer Williams's Motion for Class Certification should be denied.  First, Plaintiff does not even address, much less demonstrate the existence of, the relevant factors identified by the Ninth Circuit for certification of a misclassification claim.  *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ("*Wells Fargo*"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ("*Vinole*").  In particular, Plaintiff has no evidence of comprehensive uniform policies detailing the job duties and responsibilities of all putative class members, no evidence of uniform training, and no other common proof that would absolve the court from inquiring into how each employee spent their working day.

To the contrary, the evidence, including testimony by Plaintiff's own witnesses, establishes that the duties of the alleged class are far from uniform.  Indeed, when one witness viewed a job description for a Network Data Communications Analyst ("NDCA"), she declared that "'I don't do any of this.'"  Ex 9E (Knapp Dep. 44:19-24).  Given this demonstrated lack of uniformity, individual inquiries would be required to determine an individual's exempt status under each exemption at issue in this case (administrative, computer professional, and professional).  For these reasons, Plaintiff's motion should be denied.

II.    **FACTUAL BACKGROUND**

A.    **The Proposed Class Seeks To Include Employees At Different Locations, With Different Roles For Different Businesses And Clients**

In this case, Plaintiff is attempting to certify a class made up of California NDCAs, NDCA Srs., and Systems Administrators ("SA").[1]  These individuals performed different and variable duties at different locations, for different business areas of Lockheed Martin ("LM"), for different internal and external clients, and involving different computer and network systems.  For example, although Plaintiff's title was NDCA Sr., she was in reality a UNIX Systems Administrator who worked in Sacramento for LM's "ACE-IT" program which provided support for the U.S. Army Corps of Engineers.  In Plaintiff's own words, she described herself as "the

---

[1] These specific job titles are identified in the operative complaint.  No other job titles are at issue in the case.  *See* DCT 14, SAC ¶ 3.

1    UNIX Systems Administrator for Sacramento, and the only person who does my particular job."

2    Ex.[2] 9L & 9M (Williams Dep. 63:2-9, Dep. Ex. 2 (emphasis added)).  Plaintiff's declarant

3    Barbara Emerson was responsible for managing a complex backup system in Sunnyvale for a

4    military weapons defense project.  Plaintiff's declarant Michael Meyer worked at March Air

5    Reserve Base ("ARB") and spent the majority of his time on SCCM administration, managing

6    software upgrades to computers for the reserves.

7          Other putative class members had similarly unique roles:  Terrence Carpenter's primary

8    responsibility was software build management, which involved working with a team of software

9    developers and software engineers for LM Space Systems Co. in Sunnyvale to create executable

10   programs.  William Kellar's primary responsibilities involved coordinating and supervising the

11   installation of new voice and data wiring in buildings at LM Aeronautics Palmdale, as well as

12   supervising the resolution of problems with preexisting drops (e.g., telephone or internet "jacks").

13   Roel Flora was hired specifically to work on long-term projects such as converting his business

14   unit's network to access a wider range of IP addresses and developing an encrypted "tunnel" that

15   safeguarded data passing between firewall-protected sites.  Flora works for LM's Information

16   Systems and Global Solutions ("IS&GS") business unit, which in turn supports a classified U.S.

17   government agency.  Donald Gray, who worked in the Electronic Systems business unit, was

18   responsible for the Combat Training Center Objective Instrumentation System, a complex

19   network-based system based at Fort Irwin that was used to train soldiers to go to war, including

20   evaluating and improving the design and functionality of the multimillion dollar system.  Bruce

21   Santos worked for Missions Systems in San Diego, performing complicated network engineering

22   and configuration in a lab environment to enable testing and of the integration of equipment

23   critical to security of the Island of Taiwan.  Alen Geopfarth and Richard Westberg work in San

24   Diego and are "primarily responsible" for project work such as "designing, planning and

25   implementing" the network.  SE 10.[3]

26

27
_____

[2] All references to "Ex" refer to LM's Appendix of Evidence, filed concurrently with this Opposition.

28   [3] All reference to "SE" refers to LM's Summary of Evidence, filed concurrently with Opposition.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                    2                          Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## B.   Plaintiff's Assertions of Common Duties Are Not Common

Plaintiff's Motion attempts to lump together all putative class members by wrongly characterizing them as "Computer Technicians" who "all spent their time performing the same primary task of computer system maintenance."[4] Mtn 2.  At another point in the Motion, Plaintiff attempts to categorize class members as all performing "computer system installation, configuration, and troubleshooting to maintain computer servers and networks."  Mtn 9.  Plaintiff also attempts to rely on job descriptions, but the job descriptions for the NDCA and NDCA Sr. positions are completely different from the SA job description, and each of them identifies a number of potential duties that do not involve installation, configuration or troubleshooting.  *See* DCT 76-5 (Am. Bhowmik Decl. ¶ 25, Ex 28).  At yet another point, Plaintiff's Motion relies on boilerplate class member declarations which ambiguously state that they spent 50% or more of their time "installing, configuring, maintaining, monitoring, testing, and/or troubleshooting computer equipment, applications and/or hardware."  Mtn 7.

## C.   The Evidence Shows That Class Members' Duties Are Not Common.

The lack of commonality even in Plaintiff's own assertions as to class member duties is not surprising, given the complete lack of commonality demonstrated by the evidence.  Plaintiff herself declared that she was the only one in Sacramento who performed her job as the UNIX SA. Ex 9M & 9L (Williams Dep. 63:2-9, Dep. Ex. 2, 66:2-11).  She was not responsible for allocation of storage capacity, and she claimed that she did not do root cause analysis or perform work to address potential security risks.  Ex 9M (Williams Dep. 80:21-23, 81:23-82:5, 87:4-15).  Plaintiff testified that her "configuring" involved changing system settings to make things run better, but she only did this if she was directed to do so by the Army.  *Id*. at 110:10-23.  Plaintiff also testified that she only applied patches to the system on direction from others.  *Id*. at 114:1-8.  She testified that she only conducted documentation in the sense of identifying what was loaded on the active directory server or other basic information.  *Id*. at 122:9-22.  Plaintiff testified that she

---

[4] Even Plaintiff's witnesses did not support this characterization.  *See* Ex 9C (Emerson Dep.161:15-17 ("Q: Is there anybody in Sunnyvale that you work with who you refer to as a technician?  A: Not that I know of.")); Ex 9E (Knapp Dep. 48:13-17, 50:15-51:10) (she worked with PC technicians, but that was not her job); Ex 9L (Williams Dep. 127:1-12; 233:23-234:1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                   3                    Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

did not write any code or do shell scripting while working for LM. *Id*. at 156:23-25, 353:3-4.

Plaintiff testified that she did not perform nearly any of the duties described on the NDCA Sr. job

description. *Id*. at 136:1-139:5. As she stated, "I never did anything to the network side of the

house." *Id*. at 139:18-19. Plaintiff also claimed that she did not "make recommendations to

upper management about anything." *Id*. at 138:18-20.

   In contrast to Plaintiff's testimony, certain other individuals testified that they:

   • Did not understand how UNIX systems worked and instead had other areas of expertise.

Ex 9E (Knapp Dep. 181:25-182:3 (testifying that it was important for the ACE-IT program to hire

Williams "[b]ecause Steve [Motoike] and I don't know enough about UNIX to administer those

servers")); Ex 1 (Carpenter Decl. ¶ 3 (expertise in field of build management and build

management tools)).

   • Were responsible for allocating storage space. Ex 9C (Emerson Dep. 173:13-22).

   • Performed root cause analysis. Ex 9H (Meyer Dep. 36:9-12); Ex 9C (Emerson Dep.

74:14-75:7); Ex 6 (Sonnen Decl. ¶ 11).

   • Performed work to identify and address potential security risks. Ex 9C (Emerson Dep.

97:16-100:5); Ex 2 (Gray Decl. ¶ 12); Ex 6 (Sonnen Decl. ¶ 8).

   • Configured servers or networks without direction. Ex 6 (Sonnen Decl. ¶ 5).

   • Wrote and developed code and scripts. Ex 1 (Carpenter Decl. ¶¶ 4-5, 7); Ex 9I (Norban

Dep. 53:6-22).

   • Documented complex procedures, and wrote guidelines to assist both users and other

NDCAs and SAs. Ex 9C (Emerson Dep. 133:11-22 (testifying that she wrote at least 70

procedures)); Ex 1 (Carpenter Decl. ¶ 8); Ex 2 (Gray Decl. ¶ 12).

   • Made recommendations to superiors and to customers about various significant issues,

including upgrades of data networks and purchasing of major new equipment. Ex 2 (Gray Decl. ¶

10); Ex 1 (Carpenter Decl. ¶ 11); Ex 6 (Sonnen Decl. ¶ 4); Ex 1 (Carpenter Decl. ¶ 11); Ex 9C

(Emerson Dep. 116:7-117:6, 151:21-152:2); *see also* SE C.

   This and other evidence shows that putative class members performed a variety of

different duties, which were not at all uniformly the same. For example, Cecilia Knapp identified

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                           4                  Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

numerous specific duties on her resume that she performed.[5]  SA Barbara Emerson testified that she performed very few of the duties that Knapp identified in her resume.  Ex 9C (Emerson Dep. 160:15-161:1, 177:15-178:1, 179:5-14, 180:11-14, and 181:7-183:13).  Emerson also testified that she performed a number of duties that Knapp did not perform, including having primary responsibility for a complex backup system, researching and making recommendations for major new equipment purchases, and documenting procedures.  *Id*. at 56:7-57:6, 116:7-117:6, 133:11-22, 151:21-152:2.  Other distinct duties performed by class members include:

- Supporting end users with Synergy, a program that manages file versions when several different developers are writing software source code.  Ex 1 (Carpenter Decl. ¶ 3).

- Writing and developing software simulator code so that flight software developers could test their own software code in the simulator environment.  Ex 1 (Carpenter Decl. ¶ 5).

- Supervising and coordinating the installation of conduit, cables, and jacks, as well as supervising the repair by others of already existing jacks.  Ex 3 (Kellar Decl. ¶ 4).

- Functioning as SCCM administrator for 3,500 workstations.  Ex 9H (Meyer Dep. 26:7-18, 38:8-17).

- Working closely with an architectural team to develop the standards for a network, preparing design drawings and video diagrams that anticipate "how many devices would be required to support the amount of communication traffic that would be traveling through the devices into the . . . Internet."  Ex 9I (Norban Dep. 73:8-15 (describing duties performed by NDCA who he worked with)).

- Analyzing logs generated by network equipment to determine whether unusual or suspicious activity is taking place, such as unusual traffic that can be indicative of probes, worms and viruses, sometimes emanating from foreign nations.  Ex 6 (Sonnen Decl. ¶ 8).

- Reviewing and preparing company policies and procedures related to systems administration and changes in relevant technology.  Ex 4 (McGaha Decl. ¶ 7).

- "Building" a backup process by scripting a software system that will identify changes to

---

[5] Knapp's original job title was NDCA Sr., but she testified that this was not the correct title for the duties she performed.  Ex 9E (Knapp Dep. 43:9-24).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                            5                            Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

configurations.  Ex 9I (Norban Dep. 53:6-22).

   •   Serving as the point of contact for other LM employees, as well as the Army Corps of Engineers, and reviewing the performance of non-exempt PC technicians and phone technicians. Ex 9E (Knapp Dep. 39:12-23, 47:12-49:8, and 59:2-19); *see also* SE C.

   Also, the evidence shows that class members had duties that changed over time, such that even a single person did not have uniform duties.  For example, Michael Meyer, previously supported approximately 3,500 user workstations and now supports only 40.  Ex 9H (Meyer Dep. 38:8-17).  Indeed, Meyer testified that "things are dynamic" and that he could be "assigned a new task at any time."  *Id*. at 30:12-16.  Similarly, Barbara Emerson previously had primary responsibility for three backup servers that required a significant amount of problem resolution, but now performs different duties involving different types of servers that do not involve nearly as much problem resolution.  Ex 9C (Emerson Dep. 56:7-57:6, 58:18-25); *see also* SE F.

   Even within the "installing, configuring, maintaining, monitoring, testing, and/or troubleshooting" functions ambiguously (using the phrase "and/or") set forth in Plaintiff's declarations, witnesses described different duties and responsibilities.  For example, the term "installing" encompasses tasks that are as simple as installing anti-virus software onto a user's computer and as complex as integrating a major new piece of hardware like a virtual tape library**.**  Ex 9E (Knapp Dep. 129:3-19); Ex 9C (Emerson Dep. 102:14-105:22), SE G, Ex 8 (Jestice Rpt 12).[6]  Similarly, the term "configuring" refers to different tasks of varying complexity.  One class member, Eugene Sonnen, described "configuring" as "program[ming] the applications which run the switches and routers with rules and parameters for directing traffic that enable them to communicate with the broader network and obtain the data and information users will need."  Ex 6 (Sonnen Decl. ¶ 5 (configuring can be incredibly complex and take one or two days just for one piece of equipment)); Ex 8 (Jestice Rpt 12-13).  Another class member, Barbara Emerson, testified that "configuration changes never are simple" and that a configuration change "could be on the library, it can be on the operating system on the server, it can be on the switch, it can be on

---

[6] "Jestice Rpt" refers to the Expert Report of Ian Jestice In Rebuttal to the Expert Report of Wayne Norris, included as Exhibit 8 in the Appendix of Evidence.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                          6                        Case No. 09-cv-1669-WQH-POR
DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   the backup software." Ex 9C (Emerson Dep. 106:4-10, 107:18-21). Michael Meyer, on the other

2   hand, testified that the configuring he did on Windows servers could be accomplished by simply

3   following prompts during the installation process. Ex 9H (Meyer Dep. 76:5-17). Yet another

4   witness testified that configuring a piece of equipment "could be as simple as maybe two lines of

5   code or it's complicated with thousands of lines of changes, software changes." Ex 9K (Riccitelli

6   Dep. 55:12-56:2).

7        The term "troubleshooting" can also encompass an entire universe of tasks. *See* Ex 8

8   (Jestice Rpt 18-19). Indeed, Plaintiff's own expert witness Wayne B. Norris testified that

9   "troubleshooting" involved the analysis and resolution of problems of varying complexity,

10  ranging from a keyboard not working to a whole system being down. Ex 9J (Norris Dep. 151:18-

11  22, 153:16-22 ("Q. And so the type of problems that they could be asked to fix can range from

12  very simple problems to very complex problems? A. Absolutely.")). Mr. Norris further admitted

13  that, in order to fix a problem, "troubleshooting" could range from telling someone to reboot their

14  computer to doing a long-term root cause analysis to isolate and resolve the cause of the problem.

15  *Id*. at 152:19-21, 153:23-154:2.

16       The testimony of Plaintiff's expert is supported by the evidence, which shows that class

17  members were responsible for troubleshooting problems of varying complexity. Plaintiff's

18  witness Barbara Emerson testified that it was sometimes very easy to identify and resolve

19  problems with her servers, and other times it would be very difficult to determine and resolve the

20  issue. Ex 9C (Emerson Dep. 74:15-75:7, 176:23-177:14 (testifying that she came up with a

21  solution to one problem that was "quite novel.")). Cecilia Knapp testified that troubleshooting

22  could be "as simple as something being off or unplugged or something really complex that you

23  have to call a vendor and have them help you." Ex 9E (Knapp Dep. 134:6-11). Plaintiff's

24  witness Michael Meyer testified that he was rarely responsible for troubleshooting simple issues

25  because they would be handled by help-desk employees. Ex 9H (Meyer Dep. 141:20-8). Instead,

26  Meyer was responsible for troubleshooting harder problems that frequently "require a lot of

27  digging." *Id*. at 142:12-24. Class member Eugene Sonnen troubleshoots network problems,

28  some of which can be resolved in minutes and others that require "far more of my time to analyze

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                        7                        Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   and identify alternative solutions, make the modifications to the network that I have decided are

2   the best way to resolve the issue, and test the solution to ensure that the defect is fixed."  Ex 6

3   (Sonnen Decl. ¶ 11); *see also* Ex 2 (Gray Decl. ¶ 8 (troubleshooting involved interacting with

4   engineers, internet research and reviewing reference and vendor materials, and "high-level

5   problem solving")).  Even Plaintiff, who repeatedly attempted to downplay any aspect of her job

6   that required judgment and independent thinking, testified that Remedy trouble tickets ranged

7   from simple problems to issues that were very serious and complicated.  Ex 9L (Williams Dep.

8   122:1-4).[7]

9          Thus, the terms like "installing," "configuring," and "troubleshooting" that are used in

10  Plaintiff's motion and supporting declarations do not indicate either the complexity of the tasks

11  handled by the class members or the percentage of their time that each class member spent on a

12  given task.  Further, Plaintiff's own witnesses admitted that these basic terms could encompass

13  various different tasks.  *See*, *e.g.*, Ex 9C (Emerson Dep. 104:21-105:5, 106:11-15, 197:3-6,

14  197:11-13 (testifying that "troubleshooting" encompassed a wide variety of tasks, including

15  integrating and configuring new equipment, working with vendors, researching products and

16  making recommendations for purchases, etc.)); SE I (testimony of the tasks encompassed in

17  "maintaining").

18         Evidence also establishes that putative class members' level of supervision and authority

19  was not at all uniform.  Some putative class members (including Plaintiff) did not have a

20  supervisor working at their location; others worked on the same large campus as their supervisor;

21  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

22  [7] The evidence demonstrates that certain putative class members did not receive work tickets and others spent varying amounts of time responding to them.  Ex 7 (Varn Decl. ¶ 6 (Bruce Santos does not receive tickets)); Ex 5 (Shumway Decl. ¶ 9 (Roel Flora spends "very little time reviewing or responding to tickets")); Ex 9C (Emerson Dep.

23  93:14-94:13; 96:19-97:9 (testifying that when her primary responsibility was the backup servers, none of her work was the result of tickets, and that she subsequently spent only 10 to 15 minutes a day responding to work tickets)); Ex

24  6 (Sonnen Decl. ¶ 11 (stating that he spends 30-40% of his time working with end users, including responding to tickets); Ex 9E Knapp Dep. 68:23-69:5 (testifying that a lot of her work was based on tickets)).  Even among the

25  small team of ACE-IT employees in Sacramento, Plaintiff and Cecilia Knapp spent different amounts of time responding to tickets.  Ex 9E (Knapp Dep. 69:6-16 (testifying that she handled more tickets than Plaintiff because "a

26  user would never put in a ticket for a lot of stuff that [Plaintiff] did")).  Further, even Plaintiff admitted that the tickets she received could range from issues that were easily fixed to system-wide problems that were very difficult

27  to resolve.  Ex 9L (Williams Dep. 122:1-4, 233:10-16); *see also* Ex 9C (Emerson Dep. 148:7-12 (ticketing system could have alerted her to a very difficult project)); and Ex 9H (Meyer Dep. 67:7-12 (would only receive "more

28  difficult" tickets)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                8                         Case No. 09-cv-1669-WQH-POR
DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    and still others worked in the same office as their supervisor.  Ex 9E (Knapp Dep. 212:25-214:6

2    (Plaintiff and Knapp's supervisors worked in far away states)); Ex 6 (Sonnen Decl. ¶ 12

3    (supervisor did not work at same facility); Ex 9D (Fabel Dep. 25:19-26:5 (supervised some class

4    members at the Sunnyvale campus, as well as several who worked at the Palo Alto facility)); Ex

5    9C (Emerson Dep. 52:1-2 (direct supervisor worked two cubicles away)).  Putative class members

6    also had varying amounts of contact with their supervisors.  Ex 3 (Kellar Decl. ¶ 11 (speaks to

7    supervisor two to three times a year)); Ex 6 (Sonnen Decl. ¶ 12 (speaks to supervisor a few times

8    a month)); Ex 1 (Carpenter Decl. ¶ 6 (spoke to supervisors three times a week)).  Not

9    surprisingly, given the often limited contact with their supervisors, putative class members made

10   important decisions and decided which duties they needed to perform at any given point.  Ex 6

11   (Sonnen Decl. ¶¶ 6-7, 12 ("wide discretion" in addressing critical issues such as malfunctioning

12   switches and in designing and implementing network projects with little or no supervision)); Ex 5

13   (Shumway Decl. ¶ 4 (Roel Flora performed three-month project largely "without any direct

14   assistance or supervision")); and Ex 1 Carpenter Decl. ¶ 10 (no direct supervision)).  Indeed,

15   Plaintiff's declarant Barbara Emerson testified that she worked under "very general supervision"

16   and Plaintiff's declarant Michael Meyer testified that he was not supervised while performing the

17   SCCM administration duties that constituted 85 to 90 percent of his time.  Ex 9C (Emerson Dep.

18   175:17-19); Ex 9H (Meyer Dep. 106:26-107:18).   Plaintiff, on the other hand, testified that all of

19   her work was directed by others.  Ex 9L (Williams Dep. 316:3-16).

20          In addition, the evidence shows that the training received by putative class members was

21   anything but uniform.  Ex 9L (Williams Dep. 47:3-5 (did not attend any computer-related training

22   while employed by LM)); Ex 9H (Meyer Dep. 80:14-19 (did not receive any training on how to

23   be an SA)).  Any training was usually by choice, and related to a class member's specific duties.

24   *See*, *e.g.*, Ex 9H (Meyer Dep. 25:1-4 (stating that there were "online courses that I took on my

25   own volition")); Ex 9C (Emerson Dep. 43:15-44:6, 80:22-81:14 (testifying that it was her choice

26   to take courses on Linux, Networker, SAN management, CLARiiON host integration and

27   management, and data deduplication)); Ex 2 (Gray Decl. ¶ 4 (received specialized training in

28   UNIX and Linux)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                   9                        Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    Nor were there any uniform policies or procedures telling putative class members how to

2    perform their jobs.  Ex 9C (Emerson Dep. 162:16-24 (no policies that described her duties or

3    responsibilities as a systems administrator)); Ex 9H (Meyer Dep. 39:5-9 ("[T]here's no way

4    [manuals] could tell you exactly what to do, given the circumstances.  You just have to feel your

5    way through it.")); Ex 1 (Carpenter Decl. ¶ 10); Ex 5 (Shumway Decl. ¶ 5 ("There was not a

6    manual or instruction guide" that Flora could consult to perform tunnel encryption project)); Ex 6

7    (Sonnen Decl. ¶ 4 ("There is no check-list or manual that provides instructions as to how to

8    configure the equipment" when implementing a new network design)); Ex 9E (Knapp Dep.

9    177:17-178:4).

10    Even among employees on the same small teams, primary duties varied considerably.  For

11    example, when Doug Gray was a SA for EBS at Palmdale, each systems administrator on his

12    team had different responsibilities and areas of expertise.  Ex 2 (Gray Decl. ¶ 6).  Terrence

13    Carpenter's duties as a SA were different from the duties performed by the other SAs that he

14    worked with at SSC in Sunnyvale because none of them had the responsibility for software build

15    management.  Ex 1 (Carpenter Decl. ¶ 4.)

16    **III.   LEGAL ARGUMENT**

17    **A.   THE REQUIREMENTS FOR CLASS CERTIFICATION ARE**
         **DEMANDING**

18
19    Plaintiff bears the heavy burden of establishing that the proposed class meets all of the

20    Rule 23(a) requirements and at least one Rule 23(b) requirement.  *Zinser v. Accufix Research*

21    *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The Court must "perform a rigorous analysis to

22    ensure that the prerequisites of Rule 23 have been satisfied."  *Dukes v. Wal-Mart Stores, Inc.*,

23    2010 WL 1644259, *16 (9th Cir. 2010), cert. granted, __ U.S. __ (2010).  Plaintiff must actually

24    demonstrate, not just allege, that her suit is appropriate for class resolution.  *Id*. at *13.[8]

25    ─────────────────
         [8] Plaintiff submitted 10 almost identical and largely argumentative declarations from putative class members.  LM
26    took the deposition of three of Plaintiff's declarants and the extent to which these declarants contradicted their
         declarations in their depositions calls into question the credibility of the other declarations.  *See* LM's Objections to
27    Evidence.  In addition, Plaintiff claims to have also submitted 17 "interview summaries of putative class members."
         But as "interview summaries" are included for Plaintiff's declarants, these interview summaries are not additional
         evidence.  Further, the attorney notes are not sworn statements under the penalty of perjury.  Instead, they are
28    attorney notes of purported responses to a series of questions designed by Plaintiff's attorney, which have no
         probative value whatsoever and should be stricken.  *See Marlo v. UPS, Inc.*, 251 F.R.D. 476, 485-86 (C.D. Cal. 2008)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                    10                         Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   "Whether judicial economy will be served in a particular case turns on close scrutiny of 'the

2   relationship between the common and individual issues.'"  *Wells Fargo*, 571 F.3d at 958 (quoting

3   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

4   **B.      PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE 23(B)(3)**

5        Rule 23(b)(3) permits a class action only if "the court finds that the questions of law or

6   fact common to class members predominate over any questions affecting only individual

7   members..."  Here, because Plaintiff cannot demonstrate that class members uniformly or

8   commonly performed the same tasks in essentially the same way, the predominant issue is

9   determining how each NDCA, NDCA Sr., and SA spent his/her time.  Where this is the case, the

10  Ninth Circuit has held that class certification should – and must – be denied.

11  **1.      A Misclassification Class Should Not Be Certified If The Claims
          Require A Fact-Intensive, Individual Analysis Of Each Employee's**
12  **        Exempt Status**

13       The predominance inquiry under Rule 23(b)(3) tests whether the class is sufficiently

14  cohesive to warrant adjudication by "representation."  *Wells Fargo*, 571 F.3d at 957.  "[P]laintiff

15  must establish that the issues in the class action that are subject to generalized proof, and thus

16  applicable to the class as a whole . . . predominate over those issues that are subject only to

17  individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.

18  2001).  The court must "take[] into consideration all factors that militate in favor of, or against,

19  class certification."  *Vinole*, 571 F.3d at 946.

20       "Rule 23(b)(3) requires a district court to formulate 'some prediction as to how specific

21  issues will play out in order to determine whether common or individual issues predominate in a

22  given case.'"  *Dukes*, 2010 WL 1644259 at *16.  For misclassification claims, an assessment of

23  Rule 23(b)(3) "implicates the analytical framework within which courts review application of the

24  exemption to an employee."  *Vinole*, 571 F.3d at 944.  Certification is not appropriate if the court

25  determines that "Plaintiffs' claims require a fact-intensive, individual analysis of each employee's

26  exempt status."  *Id.* at 947.

27
28

(rejecting survey responses under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) for various reasons, including that the questions were designed by plaintiff's counsel, and the survey "asked vague and ambiguous questions that largely did not address elements of the exemption and thus has essentially no probative value.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                    11                        Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**2.      Plaintiff Fails To Address The Relevant Predominance Factors**

In *Vinole* and *Wells Fargo*, the Ninth Circuit addressed the factors that a federal court should consider in determining whether to certify a misclassification class action.  The Ninth Circuit held that "a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Vinole*, 571 F.3d at 946.  This is because "[w]hether such a policy is in place or not, courts must still ask where [in case involving outside sale exemption] employees actually spend their time." *Wells Fargo*, 571 F.3d at 959.  Rather, a court must take "into consideration all factors that militate in favor of, or against, class certification." *Id.*  The focus should be "on whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof." *Vinole*, 571 at 946.  The Ninth Circuit agreed with the district court's assessment that, "in cases where exempt status depends upon an individualized determination of an employee's work, and where Plaintiffs allege no standard policy governing how employees spend their time, common issues of law in fact may not predominate." *Id.* at 946-47 (quotation marks omitted).

Plaintiff's motion does not even address the factors identified by the Ninth Circuit.  This is not surprising because there is no evidence that LM exercised any level of centralized control over the class members, who worked for different businesses, for different customers, at different locations, under different supervisors, and who were not subject to any standardized hierarchy, standardized corporate policy and procedures governing their duties, or uniform training programs.  Instead, Plaintiff attempts to rely on vague references to broad job functions, improperly argumentative and merits-based characterizations of all class members as "Computer Technicians," and cursory references to unspecified procedures and guidelines.

**3.      The Broad Functions Identified by Plaintiff Are Not Susceptible To Common Proof**

Because there is no evidence that the job duties of the employees she seeks to represent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                12                    Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

"are largely defined by comprehensive corporation procedures and policies,"[9] Plaintiff attempts to tie these employees' duties together by describing them in terms so broad and superficial that they do not shed any light on what duties these employees actually performed.  Plaintiff's Motion repeatedly invokes the phrases "installation, configuration and troubleshooting."  First, as discussed above, different class members performed different duties having nothing to do with these functions.  Second, as Plaintiff's own witnesses confirmed, these functions are so broad and general that they provide no insight as to what duties were actually performed, at what level they were performed, what types of computer-related matters the employees worked on, or how much discretion and judgment they exercised.  *See* Ex 8 (Jestice Rpt. 3, 18-19).  Indeed, many jobs in the information technology field involve installation, configuration and/or troubleshooting on some level or to some degree.  *Id.* at 12-14.  But invoking these buzzwords does not answer the question of whether two different employees are or are not performing common duties.  For example, a help desk employee could perform low-level troubleshooting by walking a user through a pre-written script, whereas a systems administrator could perform troubleshooting on more difficult problems that required root cause analysis and the development and implementation of solutions to critical system-wide server and network problems**.**  Ex 9H (Meyer Dep. 141:20-143:11); Ex 4 (McGaha Decl. ¶ 8); Ex 6 (Sonnen Decl. ¶ 11); Ex 2 (Gray Decl. ¶ 8); *see also* Section II.C (discussing range of tasks that fall under "installation" and "configuration").

The case law confirms the fatal flaw in Plaintiff's primary theory of certification.[10]  These cases recognize that because exempt status depends on numerous factors, including how much discretion and judgment an employee is exercising in performing computer-related duties, functions like installation, configuration and troubleshooting (as well as monitoring, maintaining and testing) may or may not involve exempt duties.  While Plaintiff cites cases where low-level employees performing such duties were found to be non-exempt, other cases have found such

---

[9] *Vinole*, 517 F.3d at 946 (citing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)).

[10] In *Andrade v. Aerotek, Inc.*, 2009 WL 2757099 (D. Md. Aug. 26, 2009), the court rejected FLSA certification where the plaintiffs relied on similar overall functions but the court found that there was "a wide variety … from recruiter to recruiter, in the specific functions they perform and the degree of frequency with which they perform them."  *See also Keller v. Tuesday Morning, Inc.*, 179 Cal. App. 4th 1389, 1396 (2009) (in decertifying class, court "observed that the question of mandated management policies was subject to class-wide proof, yet the amount of time a manager spent performing these acts and his or her exercise of discretion are matters of individual inquiry").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    duties to be exempt when performed at a higher level requiring the use of discretion and

2    judgment. *See, e.g., Combs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242, 1266

3    (2008) (employee responsible for maintaining computer network and troubleshooting network

4    issues for internet service provider qualified for administrative exemption); *Bagwell v. Florida*

5    *Broadband, LLC*, 385 F. Supp. 2d 1316, 1320-21, 1326 (S.D. Fla. 2005) (administrative

6    exemption applied where duties included "problem solving, looking at the network to determine

7    what the issues were" so that a solution could be developed and making "the network system

8    function reliably"); *Bobadilla v. MDRC*, 2005 WL 2044938, *7-8 (S.D.N.Y. Aug. 24, 2005)

9    (computer professional exemption applied to network administrator whose responsibilities

10   included "problem resolution" that involved network analysis, and installing, configuring and

11   maintaining the business's network infrastructure); *Clarke v. JPMorgan Chase Bank*, 2010 WL

12   1379778 (S.D.N.Y. Mar. 26, 2010) (employee who analyzed escalated server issues to identify

13   the root cause of the problem, and then devised a solution, and proactively identified issues in the

14   system, qualified for the computer professional exemption); *Lutz v. Ameritech Corp.*, 2000 WL

15   245485 (6th Cir. 2000) (employee who ensured that network installation was up and running

16   correctly was exempt administrative employee); *Orphanos v. Charles Indus., Ltd.*, 1996 WL

17   437380 (N.D. Ill. July 29, 1996) (administrative exemption applied where employee assisted

18   customers in installing and troubleshooting equipment and was given wide latitude to fashion

19   solutions working under only general supervision); *Paul v. One Touch Technologies Corp*, 2007

20   WL 1786259 (June 21, 2007) (employee who tested, configured and modified software so that it

21   could function in customer's IT environments, was exempt administrative employee).

22          Indeed, in *Bothell v. Phase Metrics, Inc.*, the Ninth Circuit found that "[i]t is impossible to

23   determine whether Bothell's work was exempt . . . until the nature of his daily activities is

24   resolved by the fact-finder." 299 F.3d 1120, 1128 (9th Cir. 2002). There, the parties disputed

25   whether the employee performed his job independently and made or recommended critical

26   decisions or was a "highly skilled repairman" whose primary duty "was to install, troubleshoot,

27   and maintain production equipment[.]" *Id.* at 1128-29. In *Heffelfinger v. Electronic Data*

28   *Systems Corp.*, 580 F. Supp. 2d 933, 958, 960 (C.D. Cal. 2008), the court distinguished *Bothell* as

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                          14                              Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    involving a work that was "categorically different than the work performed by" database

2    administrators and systems administrators: "[W]hen computer employees like Plaintiffs

3    coordinate systems to solve a customer's computer problems, their work is administrative."

4         The authority cited by Plaintiff to make improper merits-based arguments at the

5    certification stage only serves to further demonstrate that a court cannot determine exempt status

6    simply by identifying broad functions such as troubleshooting.  Rather, these authorities

7    conducted a detailed analysis of the specific job duties and the amount of discretion exercised by

8    specific information technology employees.  *See, e.g., Martin v. Indiana Michigan Power Co.*,

9    381 F.3d 574, 581 (6th Cir. 2004) (IT support specialist performed his tasks on individual work

10   stations, not networks or servers, and conducted troubleshooting "to predetermined

11   specifications," not "systems analysis, which involves making actual, analytical decisions about

12   how [the] computer network should function"); *Eicher v. Advanced Business Integrators, Inc.*,

13   151 Cal. App. 4th 1363 (2007) (consultant did not qualify for administrative exemption because

14   he was a "production" worker where his job was to simply implement the employer's product at

15   customer venues, including installing software, troubleshooting the software, and training the

16   customer)[11]; *Turner v. Human Genome Sciences, Inc.*, 292 F. Supp. 2nd, 738, 747 (D. Md. 2003)

17   (employer's motion for summary judgment denied where system support technicians were not

18   involved in the creation or maintenance of informational databases used by employer, performed

19   only minimal troubleshooting and merely followed a systematic approach or referred the problem

20   to more skilled employees); *Burke v. County of Monroe*, 225 F. Supp. 2d 306 (W.D.N.Y. 2002)

21   (employer's motion for summary judgment denied based on detailed analysis of duties; court

22   recognized that troubleshooting could involve the exercise of discretion and independent

23   judgment, but the plaintiffs merely followed recommended procedures for troubleshooting and

24

---

25   [11] The Ninth Circuit rejected the use of the administration/production dichotomy as a determinative test in the IT
     worker context in *Bothell v. Phase Metrics*.  "The dichotomy is but one analytical tool, to be used only to the extent

26   that it clarifies the analysis.  Only when work falls 'squarely on the production side of the line,' has the
     administration/dichotomy been determinative."  *Id.* at 1127. In *Webster v. Public School Employees*, 247 F.2d 910,

27   916 (9th Cir. 2001), the Ninth Circuit rejected the argument that where a business provides administrative services to
     clients, employees who provide those services are production workers, as a contrary result "would render the
     distinction between administrative work and production work meaningless." The "production" worker argument was

28   also rejected in *Combs* and *Heffelfinger*.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                      15                       Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   essentially performed functions more analogous to key punch operators); DOL Opinion Letter

2   2006-42 (help desk support specialist did not qualify for administrative or computer professional

3   exemptions where the employee's primary duty of installing, configuring, testing, and

4   troubleshooting involved various systematic routines rather than the comparison and evaluation of

5   possible courses of conduct, and acting or making a decision after the various possibilities had

6   been considered, such that his duties did not involve the application of systems analysis

7   techniques and procedures, including consulting with users, to determine hardware, software or

8   system functional specifications or documentation, analysis, creation, testing or modifications of

9   computer systems or programs based on and related to user or system design specifications).

10      Curiously, Plaintiff also cites a 2007 DLSE Opinion Letter, but this letter clearly

11   demonstrates that Plaintiff's reliance on broad functions to determine exempt status is misplaced.

12   In that letter, the DLSE stated that it could not render an opinion regarding whether three

13   employees, including a systems administrator supervisor who had overall responsibility for the

14   maintenance of the company's database, network and infrastructure, qualified for the

15   administrative exemption.  The DLSE agreed that employees could be exempt if they were

16   involved "with the planning, scheduling and coordination of activities which are required to

17   develop systems for processing data to obtain solutions to complex business, scientific, or

18   engineering problems of his employer or his employer's customers," (citing former 29 C.F.R.

19   Section 205(c)(7)),[12] but concluded that the "job descriptions [] provided would not provide a

20   proper basis to examine the exemption question.  Rather, any trier of fact will necessarily need to

21   determine whether a particular employee is 'primarily engaged' in exempt or non-exempt

22   duties.'"  *DLSE Opinion Letter* 2007.10.29.  Thus, it would be necessary to have a "breakdown of

23   the actual job duties performed by each manager" and "the percentage of time for each task."  *Id.*;

24   *see also Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) (denying

25   conditional certification under the FLSA where the question of whether class members are

---

[12] *See also* 29 CFR 541.207(c)(7) ("In the data processing field a systems analyst is exercising discretion and independent judgment when he develops methods to process, for example, accounting, inventory, sales, and other business information by using electronic computers. He also exercises discretion and independent judgment when he determines the exact nature of the data processing problem, and structures the problem in a logical manner so that a system to solve the problem and obtain the desired results can be developed.")

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                                    16                    Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

exempt "necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption").

### 4.    The Exemptions At-Issue Will Require Numerous Individual Inquiries That Cannot Be Decided By Common Proof

Here, the exemptions the court will need to assess include administrative, computer professional, and professional.  These exemptions will require numerous individualized inquiries in order for the court to make the following determinations, among others:

- the job duties actually performed by each individual, the time spent on each duty, and the importance of each duty to LM or one of its customers.

- whether each individual's job duties involved the performance of office or non-manual work directly related to management policies or general business operations of LM or its customers.  *See* Wage Order No. 4-2001 Section 1(A)(2)(a)(i).

- whether each individual performed work that affected LM or customer policy or had the responsibility to "execute or carry it out." 29 C.F.R. § 541.205(c).

- whether each individual was an "advisory specialist." *Id.*

- whether the individual's job duties involved the customary and regular exercise of discretion and independent judgment.

- each individual's level of autonomy.  *See Taylor*, 2010 WL 4983586 at *14-16 (employee qualified for administrative extension where he made discretionary decisions on a daily basis with little or no supervision, including timely responding to problems that developed over the course of the workday).

- whether and to what extent the individual had any technical degrees or specialized computer certifications.  *See Bagwell*, 385 F. Supp. 2d at 323; *Clarke*, 2010 WL 1379778 at * 17.

- whether and to what extent an individual was responsible for administering LM or customer databases or maintaining server capacity.  *See Heffelfinger*, 580 F. Supp. 2d at 961-62 (administration of company's databases, including maintaining proper server capacity, is exempt work).

- whether the individual was primarily engaged in work that is intellectual or creative and required the exercise of discretion and independent judgment.  Labor Code § 515.5(a)(1).

- whether the individual was primarily engaged in duties consisting of one or more of the following: (1) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or systems functional specifications; (2) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs based on or related to user or system design specifications; (3) the documentation, testing, creation, or modification of computer programs related to the design of software or hardware for computer operating systems.  Section 515.5(a)(2).

1   •   whether the individual is highly skilled and is proficient in the theoretical and
2   practical application of highly specialized information to computer systems analysis,
    programming, or software engineering.  Section 515.5(a)(3).[13]

3   •   whether the employee earned a sufficient annual salary under Section 515.5(a)(4).

4   •   whether the individual has attained the level of skill and expertise necessary to
5   work independently and without close supervision.

6   •   whether the individual is engaged in the operation of computers or in the
    manufacture, repair, or maintenance of computer hardware and related equipment.

7   •   whether the individual performs under only general supervision work along
8   specialized technical lines requiring special training, experience, or knowledge.  *See* Wage Order
    4-2001 Section 1(A)(2)(d).

9   •   whether the individual is primarily engaged in the performance of work requiring
10  knowledge of an advanced type in a field of science or learning customarily acquired from a
    prolonged course of specialized intellectual instruction and study, as distinguished from a general
    academic education and from an apprenticeship, and from training in the performance of routine
11  mental, manual, or physical processes, or work that is an essential part of or necessarily incident
    to any of the above work.  *See* Wage Order 4-2001 Section 1(A)(3)(b)(i).

12  •   whether the individual's work is predominantly intellectual and varied in character
13  (as opposed to routine, mental, manual, mechanical, or physical work) and is of such character
    that the output produced or the result accomplished cannot be standardized in relation to a given
14  period of time.  *See* Wage Order 4-2001, Section 1(A)(3)(b)(iii).

15      The evidence demonstrates that these numerous determinations can only be made

16  individually and not based on common proof.  The putative class members performed different

17  job duties with different responsibilities and sometimes those duties and responsibilities changed

18  over time.  They worked on very different projects, worked with different software and hardware

19  technologies, reported to different managers located either on site or thousands of miles away,

20  exercised varying levels of discretion, worked in different LM businesses, worked for different

21  LM customers, worked on different teams, had varying levels of experience, held varying degrees

22  and technical certifications, and earned different amounts of salary at different points in time

23  within the relevant limitations period.  *See* Sections II.A and II.C; Defendant's Summary of

24  Evidence.

25      Further, individual credibility assessments will need to be made, as highlighted by the

26  differences here between Plaintiff's resume descriptions and deposition testimony, and the

27

28

---

[13] Plaintiff's motion blatantly mischaracterizes this disjunctive requirement ("or software engineering") in Section
515.5(a)(3), as a conjunctive requirement ("**and** software engineering).  *See* Mtn 14-15.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    differences between the declarations and "questionnaires" filed on behalf of Plaintiff's witnesses

2    and their own deposition testimony.[14]

3         **5.     Plaintiff's Alleged Common Evidence Does Not Eliminate Any Of The**

                   **Individual Inquirie**s

4

5         In *Wells Fargo* and *Vinole*, the Ninth Circuit held that corporate policies will not support

6    certification unless they demonstrate a "level of centralized control" such that they "govern []

how employees spend their time," *Vinole*, 571 F.3d at 946-47, and "reflect the realities of the

7    work place," *Wells Fargo*, 571 F.3d at 958-59. Plaintiff has identified no policies meeting these

8    standards. The Motion seeks to rely on job descriptions, "change control protocols," and security

9    guidelines. With respect to the job descriptions, the Ninth Circuit confirmed in *Vinole* that to

10    determine whether an employee is exempt under California law, a court "must conduct an

11    individualized analysis of the way each employee actually spends his or her time, and not simply

12    review the employer's job description." 571 F.3d at 937. Here, this point is particularly

13    appropriate because the job descriptions at issue are short and broadly worded, and mention

14    <u>different</u> duties, and in the case of the SA description, ambiguously state that "duties *may*

15    include" various functions. *See* SE B. In addition, Plaintiff and several of her witnesses testified

16    that they did not perform the duties described in the NDCA and NDCA Sr. job descriptions, and

17    they did not perform all of the duties described in the SA description. Indeed, as discussed above,

18    the job descriptions do not mention certain duties which Plaintiff claims are common, and

19    mention other duties that Plaintiff claims she did not perform. Thus, the job descriptions do not

20    govern how employees spend their time, and which, if any, job descriptions duties were

21    performed is an individual, not a common question. *See Mike v. Safeco Ins. Co. of America.*, 223

22    F.R.D. 50, 53-54 (D.Conn. 2004) (denying certification because determining whether putative

23    class members actually performed duties in job description is an individualized question).

24         Plaintiff's attempted reliance on purported "rigid Change Control parameters" fares no

25    better. Initially, the testimony that Plaintiff cites does not support her allegation of the existence

26    of "rigid Change Control parameters." Instead, the testimony describes change control board

27

---

[14] *See* LM's Objections to Evidence, filed concurrently with this Opposition.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                   19                Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1  processes in different programs.[15]  *See, e.g.,* Ex 9A (Brown Dep. 124:3-125:24 (describing the

2  purpose of change control as a way to communicate what is going to be happening in the

3  environment)); and Ex 9B (Dotson Dep. 85:2-86:12 (purpose of change control to insure have

4  fully evaluated the risk of the change to make an informed decision as to whether to proceed or

5  not)).  Plaintiff has also not submitted any documents that constitute these so-called "rigid

6  Change Control parameters," because no such parameters exist.

7         If Plaintiff is referring to change control board, her argument is still off base.  The purpose

8  of change control boards, which are common in large organizations, is to assess the risks to the

9  company of performing a particular change.  Ex 8 (Jestice Rpt 25-26).  As the change control

10  board process was described by one witness in his organization, after a NDCA, NDCA Sr., or SA

11  has determined that a change to the system is required, and if the change must be submitted to a

12  change board, the NDCA, NDCA Sr., or SA must submit a report to the Board identifying the

13  specifics of change, the purpose and benefits of the installation, who could be affected by the

14  change, any expected down time, and the recovery process and back-up plan in case of failure.

15  Ex 9K (Riccitelli Dep. 59:7-66:22); *see also* Ex 9D (Fabel Dep. 60:2-61:9 (form submitted to

16  change control board "explains the change, the ramifications, and the back-out plan)).  Any

17  change control board approval, therefore, would require a NDCA, NDCA Sr., or SA to not only

18  identify recommended system changes, but also analyze and evaluate the overall risks of the

19  recommended change.  Finally, contrary to Plaintiff's assertion, exercising discretion and

20  independent judgment and authority does not require that the employee have final decision-

21  making authority.  *Heffelfinger,* 580 F. Supp. 2d at 964 ("[C]ourts have consistently held that

22  final decision-making authority is not a prerequisite to the exercise of discretion.").  Rather, under

23  the relevant regulations and prior decisions, "making recommendations for review by others can

24  constitute exercising discretion, especially if the recommendations go to the administration and

25  improvement of a computer network."  *Id.; see also* 29 C.F.R. § 541.207(e).  Any requirement to

26  receive change control approval before making a recommended change to the system, therefore,

27

28

[15] The portion of Scott Norban's testimony cited by Plaintiff has no bearing on her assertion.  Ex 9I (Norban Dep. 58:3-59:9 (requests for upgrades come from the project management team, including the change control board)).

1    does not "obviate the possibility" of exercising discretion and judgment.

2         Plaintiff's vague reference to "Security Guidelines" is equally unavailing.  The fact that

3    LM as a defense contractor must adhere to security guidelines obviously does not mean that all

4    LM employees are performing the same duties.  Again, the declarations submitted by Plaintiff do

5    not even mention security guidelines, much less claim that such guidelines result in uniform

6    duties and no such guidelines have been presented in evidence.

7         Further, the fact that employees must follow security guidelines does not create common

8    evidence of an inability to exercise sufficient discretion and independent judgment under the law.

9    In this regard, it is not necessary, as the Motion wrongly claims, to "make decisions that could

10   alter the direction of the company or the customers," or to be "directing the overall direction of

11   the business of LM's customers as a whole" in order to exercise discretion and judgment under

12   the applicable law.  Rather, the phrase "exercise of discretion and independent judgment" is

13   defined as generally involving

14        the comparison and the evaluation of possible courses of conduct and
          acting or making a decision after the various possibilities have been
15        considered.  The term … implies that the person has the authority or
          power to make an independent choice, free from immediate direction or
16        supervision, and with respect to matters of significance.

17   29 C.F.R. § 541.207(a).  "The requirement that discretion be exercised with respect to 'matters of

18   significance' means the decision being made must be relevant to something consequential and not

19   merely trivial."  *Taylor v. United Parcel Service, Inc.*, 2010 WL 4983586, *16 (Dec. 9, 2010).

20   Further, "where government regulations or internal employer policies and procedures simply

21   *channel* the exercise of discretion and judgment, as opposed to *eliminating* it entirely or otherwise

22   constraining it to a degree where any discretion is largely inconsequential," employees can

23   exercise sufficient discretion and judgment under California law to qualify as exempt.  *Id.* at *15

24   (emphasis in original); *see also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374-75

25   (7th Cir. 2005) ("While the plaintiff's discretion may be channeled by the regulations that apply

26   to [nuclear power plants], that does not mean ComEd employees do not exercise independent

27   judgment.").

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                              21                    Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

### 6.    Plaintiff's Certification Authority Is Either No Longer Good Law or Readily Distinguishable

Consistent with Plaintiff's failure to address the requirements of *Wells Fargo* and *Vinole*, the motion relies almost exclusively on cases that predate those decisions. *See* Mtn 1 fn. 2, 19. Indeed, in three of the cases cited by Plaintiff, the courts subsequently decertified the classes based on the standards set forth in *Vinole* and *Wells Fargo*. *See Wong v. HSBC Mortgage*, 2010 WL 3833952 (N.D. Cal. Sept. 29, 2010); *Weigele v. Fed Ex*, 2010 WL 1337031 (S.D. Cal. Apr. 5, 2010); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, Case No. C05-2320 SBA (N.D. Cal. Oct. 2, 2009).  All of the pre-*Vinole* and *Wells Fargo* decisions that Plaintiff cites placed near-exclusive reliance on the employer's common classification of a position as exempt, which the Ninth Circuit subsequently ruled was an abuse of discretion. *See Heffelfinger v. EDS Corp.*, 2008 WL 892989 (C.D. Cal. Jan. 7, 2008); *Alba v. Papa John's USA, Inc.*, 2007 WL 953849 (C.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005), *aff'd on other grounds*, 623 F.3d 743 (9th Cir. 2010).  Other cases cited by Plaintiff are clearly distinguishable.  In *Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006), every store manager class member was required to comply with a checklist prepared by the company that set forth a list of items that needed to be completed every day.  Further, the employer conceded that a single set of sixteen specified tasks was applicable to all store managers. *Id.* at *8.  In *Brady v. Deloitte and Touche LLP,* 2010 WL 1200045 (N.D. Cal. Mar. 23, 2010), the plaintiffs pointed to specific statutes and company policies regulating unlicensed accountants – including national training to ensure they all performed audits the same way – that restricted the discretion of class members and caused them to not work under only general supervision.  There is no evidence here of any such statutory or policy restrictions, global training or common duties uniformly performed by all class members.

Other cases cited by Plaintiff involved the lenient "first stage" certification standard under the FLSA, not Rule 23 (*e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124 (N.D. Cal. 2009) ("the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23"), involved an uncontested motion for approval of a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                    22                    Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   settlement where it was stipulated that the putative class had the same work duties and work

2   experiences, (*e.g.*, *Louie v. Kaiser Foundation Health Plan, Inc.*, 2008 WL 4473183 (S.D. Cal.

3   Oct. 6, 2008)), or did not even involve misclassification claims (*Dilts v. Penske Logistics, LLC*,

4   267 F.R.D. 625 (S.D. Cal. 2010); *Ortega v. J.B. Hunt Transportation, Inc.*, 258 F.R.D. 361 (C.D.

5   Cal. 2009); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008); *Kurihara v.

6   Best Buy Co, Inc.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007).

7        Plaintiff also relies on state law cases that do not address Rule 23, or the relevant factors

8   identified by the Ninth Circuit in *Wells Fargo* and *Vinole*.  *See* Mtn 22-23.  Further, the law

9   discussed *infra* demonstrates that simply identifying a computer-related task like "configuring" or

10  "troubleshooting" will not allow a court to classify it as exempt or non-exempt without an

11  individualized inquiry into what the employee was actually doing and the amount of discretion

12  and independent judgment exercised by the employee in performing that task.  Indeed, even under

13  the state law standard argued by Plaintiff, cases decided subsequent to *Sav-On Drugstore, Inc. v.

14  Superior Court*, 34 Cal. 4th 319 (2004), have denied class certification in misclassification cases

15  where, as here, the evidence shows the need for individualized inquiries to determine each

16  putative class member's exempt status.  *See Arenas v. El Torito Rests., Inc.*, 183 Cal. App. 4th

17  723, 734-35 (2010); *Keller v. Tuesday Morning, Inc.*, 179 Cal. App. 4th 1389, 1399 (2009);

18  *Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1431-32 (2006); *Walsh v. Ikon Office

19  Solutions, Inc.*, 148 Cal. App. 4th 1440, 1458 (2007).

20       Similarly, in *Wells Fargo II*, on remand the district court found that even though there

21  were common job descriptions, uniform training, standardized evaluation standards, and similar

22  compensation plans, these common issues would not eliminate the need for the court to conduct

23  fact-intensive inquiries into how each class member spent their working day.  The court found

24  that these individual inquiries "would inevitably consume the majority of a trial, and overwhelm

25  the adjudication of common issues."  2010 WL 174329, *7 (N.D. Cal. Jan. 13, 2010).

26         **7.**    **Individual Issues Predominate In Litigating Plaintiff's Meal and Rest
          Period Claims**

27

28  Plaintiff submits <u>no</u> evidence to substantiate her burden that her meal and rest break

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    claims should be certified.  Certification of those claims should be denied on that basis alone.

2    Plaintiff cannot avoid her evidentiary burden by wrongly asserting that "derivative claims" are

3    routinely certified with misclassification claims.  Mtn at 1 fn 3.  The cases Plaintiff cites do not

4    support this assertion.  *Dilts v. Penske Logistics, LLC* and *Ortega v. J.B. Hunt Transportation,*

5    *Inc*. had no misclassification claims, and *Brady v. DeLoitte & Touche LLP*, did not have meal and

6    rest break claims.  The decision in *Campbell v. Pricewaterhousecooper, L.L.P.*, 253 F.R.D. 586

7    (E.D. Cal. 2008), to disregard the evidence that meal and rest claims present individualized

8    issues, is erroneous and should not be followed.  Plaintiff's meal and rest break claims are not

9    entirely derivative of her misclassification claim.  Even if she were found to be non-exempt,

10   liability would depend on whether employees were "provided" a meal break or "authorized and

11   permitted" to take a rest break – an individualized inquiry as to each employee and each break.

12   *See Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 534 (S.D. Cal. 2008) ("plaintiffs must

13   show defendants forced plaintiffs to forego missed meal periods").  Under this standard, courts

14   have found that meal and rest break claims are not appropriate for class treatment because

15   individual inquiries predominate.  *See, e.g.*, *Blackwell v. SkyWest Airlines*, 245 F.R.D. 453, 467

16   (S.D. Cal. 2007); *Brown v. Federal Express*, 2008 WL 906517 (C.D. Cal. 2008); *Hernandez v.*

17   *Chipotle Mexican Grill, Inc.*, 189 Cal. App. 4th 751 (2010).[16]  Not only has Plaintiff failed to

18   present any common proof that meal or rest breaks were not provided, the evidence shows that

19   they were provided.  Plaintiff's co-worker Cecilia Knapp admitted that she took regular lunch and

20   meal breaks, comments that were echoed by other class members.  Ex 9E (Knapp Dep. 222:12-

21   20); *see also* Ex 3 (Kellar Decl. ¶13); Ex 1 (Carpenter ¶ 13); Ex 6 (Sonnen Decl. ¶ 14); Ex 2

22   (Gray Decl. ¶ 16)(same)).

23        **C.**    **Plaintiff Fails To Establish That A Class Action Is The Superior Method For**
             **Adjudicating The Claims At Issue**
24
25              Pursuant to Rule 23(b)(3), Plaintiff must also establish that a class action is superior to

26   other methods of adjudication.  Rule 23(b)(3)(D) requires a court to consider "the likely

27   ────────────────

     [16] Plaintiff's UCL claim is derivative of her Labor Code claims, and therefore cannot be certified for the same
     reasons.  *See, e.g., Cornn v. UPS*, 2005 U.S. Dist. LEXIS 47052 *37 (N.D. Cal. Mar. 14, 2005); *Combs*, 159 Cal.
28   App. 4th at 1269.  Plaintiff's reliance on cases not involving Labor Code claims, decided before Proposition 64
     imposed certification and actual injury requirements for UCL claims, is misplaced.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                              24                          Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   difficulties in managing a class action" when deciding whether class certification is proper.  "If

2   each class member has to litigate numerous and substantial separate issues to establish his or her

3   right to recover individually, a class action is not 'superior.'"  *Zinser*, 253 F.3d at 1192.  In

4   *Weigele*, the court agreed that "given all of the individual issues that must be litigated in this

5   matter, trial administration would be overwhelming."  *Weigele*, 2010 WL 1337031 at *10.  The

6   same is true here.

7         The party seeking class certification bears the burden of demonstrating "a suitable and

8   realistic plan for trial of the class claims."  *Zinser*, 253 F.3d at 1198.  In *Wells Fargo*, the Ninth

9   Circuit rejected the notion that "innovative procedural tools" could render a misclassification trial

10   manageable "in light of our determination that Plaintiffs' claims require a fact-intensive,

11   individual analysis of each employee's exempt status."  571 F.3d at 947; *see also Mendoza v.*

12   *Home Depot, U.S.A. Inc.*, 2010 WL 424679, *10 (C.D. Cal. Jan. 21, 2010) (finding class action

13   not superior "particularly in light of the fact that Home Depot should be entitled to raise

14   affirmative defenses to individual plaintiffs' claims").

15         In addition, a class action is not superior if it is unlikely a jury will be able to reasonably

16   and rationally rule on all the issues.  *See Weigele*, 2010 WL 1337031 at *11 ("Moreover, the

17   Court is unclear how a jury will be able to sort out the issues placed before it.  It appears that they

18   will need to determine whether each testifying witness was or was not exempt and determine to

19   what extent that witness was not provided with mandated overtime, meal, and rest breaks.  They

20   will then need to extrapolate from all of the testifying witnesses to the entire class.  But it is

21   unclear which tools they will have to perform that extrapolation.  At worst it appears that they

22   would be left to guess.  This is too amorphous to expect a reasonable and rational result from any

23   jury.").

24         Here, Plaintiff does not demonstrate "a suitable and realistic plan for trial of the class

25   claims" through any type of common proof.  Indeed, because the resolution of Plaintiff's claims

26   would require substantial individualized fact-finding, any trial would be consumed by inquiries

27   into how each NDCA, NDCA Sr., or SA spent his/her day, making a class trial no better than a

28   series of individual actions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1   **IV.**     __CONCLUSION__

2          For the foregoing reasons, LM respectfully requests that the Court deny Plaintiff's Motion

3   for Class Certification.

4   Dated: December 20, 2010                    MORGAN, LEWIS & BOCKIUS LLP

5

6                                        By  /s/  Jennifer White-Sperling
                                               _____
7                                              Jennifer White-Sperling
                                               Attorneys for Defendant
8                                              LOCKHEED MARTIN CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22083660.7                          26                  Case No. 09-cv-1669-WQH-POR

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION